IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JAMES ROY MASSENGALE, JR.,    :
    :
        Plaintiff    :
    :
    VS.    :
    :
BETTY ANN COOK, ,    :    **NO. 1:04-cv-48(WLS)**
    :
        Defendants    :    **RECOMMENDATION**

---

Plaintiff **JAMES ROY MASSENGALE, JR.** filed the above-captioned *pro se* complaint pursuant to 42 U.S.C. § 1983 and is proceeding *in forma pauperis*. On January 7, 2005, the undersigned conducted a frivolity review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2). Because plaintiff's complaint and numerous amendments were excessive in length and contained wide-ranging allegations, the Court ordered plaintiff to submit a recast complaint. Plaintiff has submitted his recast complaint.

Plaintiff's original pleadings named numerous defendants. In the Court's order directing plaintiff to recast his complaint, he was informed that his recast complaint would supercede the original complaint and all of plaintiff's amendments and other filings. In his recast complaint, plaintiff has eliminated all but the following nine defendants:  Former members of the Georgia Board of Pardons and Paroles (the "Board") Betty Ann Cook, Wayne Garner, Timothy E. Jones, James T. Morris, and Walter S. Ray; current Board member Garfield Hammonds, Jr.; Warden Fredrick Head; former Commissioner of the Georgia Department of Corrections ("GDOC") James

Wetherington, and current GDOC Commissioner James Donald.[1]  The Clerk of Court is directed to correct the docket to reflect that the above are the sole named defendants.

## I.    STANDARD OF REVIEW

### A.  28 U.S.C. § 1915(e)(2)

Pursuant to 28 U.S.C. § 1915(e)(2), the Court is required to review complaints filed by prisoners against a governmental entity or its employees and dismiss any portion of the complaint the Court finds:  (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  An action is frivolous when the plaintiff's legal theory or factual contentions lack an arguable basis either in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  In determining whether a cause of action fails to state a claim on which relief may be granted, as contemplated by Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327 (quoting *Hishon* v. *King & Spalding*, 467 U.S. 69, 73 (1984)).

### B.  General Requirements of 42 U.S.C. § 1983

---

[1]  Although the Court advised plaintiff that he must name the individuals whom he seeks to include as defendants herein in both the caption and the body of his amended complaint, plaintiff has nevertheless included in the text of the complaint two additional defendants not included in the caption (Head and Donald).  Because of plaintiff's *pro se* status, the Court will consider plaintiff's claims against these defendants.

In order to state a claim for relief under section 1983, a plaintiff must allege two elements. First, the plaintiff must allege that an act or omission deprived him of a right, privilege, or immunity secured by the Constitution of the United States. *See Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). Second, the plaintiff must allege that the act or omission was committed by a person acting under color of state law. *Id.*

## II. BACKGROUND

In 1987, plaintiff was convicted of voluntary manslaughter and sentenced to twenty years imprisonment. Plaintiff was sentenced in 1996 to an additional four years for the crimes of escape and theft of a motor vehicle. His maximum release date is March 31, 2013. In this action, plaintiff raises a number of claims relating to the parole process. Plaintiff further alleges that he was forcibly medicated while he was incarcerated at Autry State Prison. Finally, plaintiff alleges that he was denied access to courts. Plaintiff seeks various forms of relief. He asks this Court to order "proper parole consideration" and to preclude "use of fictitious mental illness." He also seeks nominal, compensatory, and punitive damages.

Each of plaintiff' claims is discussed separately below.

## III. DISCUSSION

### A. Parole Issues

As an initial matter, the Court notes that the Eleventh Circuit Court of Appeals has held that the individual members of the Board are entitled to absolute quasi-judicial immunity from a suit for

damages. ***Holmes v. Crosby***, 418 F.3d 1256 (11th Cir.2005); ***Fuller v. Georgia State Bd. of Pardons & Paroles***, 851 F.2d 1307, 1310 (11th Cir. 1988). They are not, however, immune from a claim for injunctive relief. ***Fuller***, 851 F.2d at 1310.

### i. Due Process

Plaintiff complains that the Board failed to provide plaintiff a timely parole review in February 2004. Plaintiff further appears to allege that in 1995, 1996, and 1998 the Board considered his parole eligibility with only one member instead of a majority of the five members as required by required by O.C.G.A. § 42-9-42(a).

The Supreme Court of the United States has recognized that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." ***Greenholtz v. Inmates of Nebraska Penal & Correctional Complex***, 442 U.S. 1, 7 (1970). Therefore, a prisoner who is denied parole is not deprived of a liberty interest as recognized by section 1983 or the due process clause unless state law makes the parole decision mandatory.

The question of whether the Georgia parole system creates such a constitutionally protected liberty interested was considered by the Eleventh Circuit Court of Appeals in ***Sultenfuss v. Snow***, 35 F.3d 1494 (11th Cir. 1994). The Court of Appeals first considered the question whether the Georgia parole system creates an expectation of parole by placing substantive predicates on the discretion of state officials. The Court found that although the Guidelines provide particular criteria that the Board must consider, the statutes and regulations do not provide standards that

"meaningfully limit the discretion of the decisionmakers." *Id.* at 1501. Second, the Court considered whether the Georgia system mandates a particular outcome that must be reached if the relevant criteria have been met. *Id.* The Court did not find such a mandate in Georgia's statutes and regulations; instead, it found that O.C.G.A. § 42-9-42 actually creates a presumption against parole. *Id.* at 1502. Finally, the Court determined that the Georgia statute and regulations do not contain mandatory language requiring that the decisionmaker follow certain procedures. *Id.* Thus, the Court concluded that the Georgia parole system does not create a constitutionally protected liberty interest in parole.

Because the Georgia parole system does not create a constitutional due process interest that would confer upon plaintiff an expectation of a particular outcome in his parole decision, the Board's

alleged failure to provide plaintiff timely review (and ultimate denial of parole) did not violate his rights under the Due Process Clause of the Fourteenth Amendment. Although plaintiff may believe that he is entitled to parole, the Board has broad discretion to require plaintiff to serve his entire sentence in prison.

Plaintiff emphasizes the alleged "illegality" of a single Board member making parole decisions. Plaintiff is apparently focused upon O.C.G.A. § 42-9-42(a). This statute, however, does not require that a majority of the Board make all parole decisions, but simply states that no person

shall be granted parole except by majority vote.[2] Thus, O.C.G.A. § 42-9-42(a), like the other provisions of the Georgia parole law, cannot be interpreted to provide a protected liberty interest.[3]

Accordingly, it is hereby **RECOMMENDED** that plaintiff's due process claims be **DISMISSED**.

### ii. *Equal Protection*

Plaintiff, a white male, alleges that black and female inmates convicted of voluntary manslaughter received parole whereas plaintiff has not, in violation of the equal protection clause. In order to state an equal protection claim, plaintiff must show that "'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." ***See Jones***, 279 F.3d at 946-47 (quoting ***Damiano v. Florida Parole & Prob. Comm'n***, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam).

According to plaintiff, defendants violated his rights when they granted parole to 25 inmates with the "same or greater guidelines classifications" but denied plaintiff parole. Plaintiff has provided the prisoner identification numbers for some 25 former and/or current prisoners convicted

---

[2] According to plaintiff, "thousands" of Georgia prisoners were released by a single member between 1991 and 2002. Plaintiff attached to his recast complaint a newspaper article stating that prisoners were released in apparent violation of O.C.G.A. § 42-9-42(a).

[3] Plaintiff's complaint contains the summary statement "As a collateral consequence plaintiff's past parole decisions are false information that he failed to meet the standards under O.C.G.A. § 42-9-42(c)." Plaintiff does not appear to allege that the Board used false information in considering plaintiff's parole. Even if he were so alleging, such a conclusory allegation without any supporting facts, does not state a due process claim. ***See Jones v. Ray***, 279 F.3d 944, 946 (11th Cir. 2001).

of voluntary manslaughter who supposedly received more favorable treatment. The Court examined each of these inmates on the official website for the GDOC. *See* http://www.dcor.state.ga.us./. Of these 25, 6 are white males and 1 could not be found. None of the remaining 18 inmates, although convicted of voluntary manslaughter, has also been convicted of a subsequent charge of escape and theft of a motor vehicle.[4] Given that the inmates with whom plaintiff compares himself are not similarly situated, the Court finds that his equal protection claim must **DISMISSED** as being legally frivolous. It is so **RECOMMENDED**.

### iii. Retaliation

Plaintiff is also possibly alleging that the Board denied his parole in retaliation for his having filed a lawsuit against the Board. As evidence of retaliation, plaintiff appears to allege that in December 2003 he filed suit against the Board (***Massengale v. Parole Board***, 2003-CV-78567) and that the Board denied his parole in May 2004. Even though plaintiff has no entitlement to parole and construing the retaliation claim liberally in favor of the plaintiff, the Court determines that it may go forward against the Board members. ***See Clark v. State of Georgia Pardons and Paroles Bd***, 915 F.2d 636, 639 (11th Cir. 1990) (holding that inmate's contention that he was denied parole for pursuing litigation against prison officers stated equal protection claim and should not have been dismissed as frivolous).

### B. Forced Medication

_____

[4] Other than listing the above 25 inmates, plaintiff has not alleged any rule, policy, practice of the Board which discriminates against white males.

Plaintiff complains that he has been medicated against his will. According to plaintiff, he has been forced to take various psychotropic drugs. As a result, he apparently has suffered facial tics and other unspecified neurological damage. The precise parameters of plaintiff's forced medication claim are unclear. Moreover, it is not clear which of the named defendants were responsible for the constitutional violations that plaintiff alleges. Notwithstanding these issues, the Court finds that said allegations may give rise to a valid constitutional claim. The Court will, therefore, require service of process on defendant Warden Fredrick Head, who would appear to be the only named party responsible for the alleged forced medication.

### C. Access to Courts

Plaintiff appears to allege that defendants Warden Head and Commissioner James Donald interfered with plaintiff's constitutional right of access to the courts by failing to transport him to Fulton County Superior Court to attend a hearing regarding a case plaintiff filed against the Board.

For a claim to rise to the level of a constitutional violation of plaintiff's right to access to the courts, plaintiff must show that he suffered an "actual injury," *see Lewis v. Casey*, 518 U.S. 343, 351 (1996), "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (1998). Construing the complaint liberally in favor of plaintiff, the Court will allow plaintiff's access to courts claim against Head and Donald to go forward.[5]

_____

[5] Plaintiff makes a vague reference in his recast complaint to the fact that in 2003, Bobby Whitworth, former member of the Board and former Commissioner of the GDOC, was convicted

*IV. CONCLUSION*

Based on the above, the undersigned **RECOMMENDS** that plaintiff's claims arising out of the denial of his parole be **DISMISSED** as frivolous pursuant to 28 U.S.C. § 1915(e)(2). The undersigned also **RECOMMENDS** that former GDOC Commissioner James Wetherington, against whom plaintiff failed to state a cognizable claim, be **DISMISSED** as a defendant herein. Pursuant to 28 U.S.C. § 636(b)(1), plaintiff may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within ten (10) days after being served a copy of this order.

The only claims that remain in this lawsuit are those relating to retaliation, denial of access to courts, and forced medication. The Court will, by separate order, allow said claims to go forward as to all defendants except Wetherington.

**SO RECOMMENDED**, this 17th day of April, 2006.


*/s/ Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

---

in state court for "influencing peddling." However, the allegation that Whitworth was convicted of a crime does not automatically constitute a violation of constitutional rights necessary to sustain a section 1983 action. *Crocker v. Hakes*, 616 F.2d 237, 239 n.2, 240 (5th Cir. 1980) (violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution). Plaintiff has not alleged any facts indicating that this alleged violation of state law affected any of plaintiff's constitutional rights.